UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————— X
                                              :
STEVE DRESSLER,                               :
                                              :
                            Plaintiff,        :
                                              :
              -v-                             :         15-CV-3696 (JPO)
                                              :
CITY SCHOOL DISTRICT OF THE CITY              :         OPINION AND ORDER
OF NEW YORK, the NEW YORK CITY                :
DEPARTMENT OF EDUCATION, and                  :
MARK MCLEAN, in his professional              :
capacity,                                     :
                                              :
                            Defendants.       :
                                              :
————————————————————————— X

J. PAUL OETKEN, District Judge:

        Plaintiff Steve Dressler, a school teacher, commenced this action by filing a complaint on

May 13, 2015, against the "City School District of the City of New York," the New York City

Department of Education ("DOE"), and Mark McLean (collectively, "Defendants").  (Dkt. No.

1.)  Dressler alleges that Defendants discriminated against him on the basis of his age and

retaliated against him for opposing such discrimination in violation of the Age Discrimination in

Employment Act of 1967 ("ADEA"); the New York State Human Rights Law ("NYSHRL");

and the New York City Human Rights Law ("NYCHRL").  (Dkt. No. 19 ¶ 1.)  Defendants have

moved to dismiss his claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Dkt. No. 20.)

For the reasons that follow, the motion to dismiss is granted.

I.      **Background**

        The following facts are drawn from the First Amended Complaint and are presumed true

for the purpose of this motion.

Dressler has been employed as a teacher in the New York City public school system for approximately twenty-nine years.  (Dkt. No. 19 ¶ 12.)   He was sixty years old at the time that he filed the First Amended Complaint.  (*Id.* ¶ 13.)

Prior to the 2006-2007 school year, Dressler began serving in the DOE's "Absent Teacher Reserve" ("ATR"), a reserve of teachers in the DOE without a permanent school assignment.  (*Id.* ¶ 14.)  Plaintiff alleges that teachers in the ATR are assigned to various schools on a temporary basis while they look for a permanent position.   Teachers are assigned ATR status for a variety of reasons, including school closings.  (*Id.*)

Dressler has received "satisfactory" annual ratings of his teaching performance for most of his career.  (*Id.* ¶ 16.)  However, after Dressler took leave for two and a half months pursuant to the Family and Medical Leave Act ("FMLA"), Dressler alleges that he was subjected to an "escalating pattern of discrimination and harassment" resulting in negative evaluations.  (*Id.* ¶ 17-18.)  In response, Dressler filed a charge of discrimination with the Equal Opportunity Commission ("EEOC") on May 30, 2010 (*id.* ¶¶ 17-18), as well as an action against the DOE, *Dressler v. N.Y. City Dep't of Educ.*, No. 10-CV-3769, 2012 WL 1038600 (S.D.N.Y. Mar. 29, 2012), alleging violations of 42 U.S.C. § 1983; the ADEA; the FMLA; the NYSHRL; and the NYCHRL.  (*Id.* ¶ 18).  The matter was closed on August 2, 2012.  (Id. ¶ 19.)  Following resolution of that dispute, Dressler received a "satisfactory" rating for the 2012-2013 school year.  (*Id.* ¶ 20.)

Mark McLean, the Program Manager for ATR Supervisors, served as the supervisor of Dressler's direct supervisors during the period at issue in this suit.  (*Id.* ¶¶ 7, 38.)  In January 2014, McLean assigned Dressler to a new ATR Field Supervisor, Dr. James Barnes.  (*Id.* ¶ 21.)

Dressler alleges that Dr. Barnes was placed in the role of his supervisor "for the purpose of retaliating against him for his prior efforts to enforce his rights against discrimination, and for the purpose of beginning a new campaign of age-based discrimination against Dressler to pressure him into early retirement." (*Id.* ¶ 21.)  In particular, he contends that after being assigned to his supervision, Dr. Barnes sent him a short email "implying that [Dressler] would fail to appear at work." (*Id.* ¶ 24. ("Please let me know if you will NOT be at work on Tuesday.").)  In a meeting between the two, Dr. Barnes commented that Dressler had "been an ATR for a long time." (*Id.* ¶ 25.)

Dressler states that in contrast to his previous supervisors, who would inform Dressler before observing him and coordinate observations with school administrators, Dr. Barnes also "intimidated" Dressler by announcing that he could observe Dressler's teaching without notice. (*Id.* ¶ 26.)  Moreover, on March 17, 2014, Dr. Barnes informed Dressler's school that he would be coming to observe Dressler, but ultimately did not appear. (*Id.* ¶ 27.)

On March 18, 2014, Dressler asked McLean if he could be assigned a new supervisor. (*Id.* ¶ 28.)  On March 19, Dr. Barnes observed Dressler teaching a class and gave him an "unsatisfactory" rating. (*Id.*)  During a subsequent meeting to discuss this rating, Dr. Barnes asked Dressler why he complained about him to McLean. (*Id.* ¶ 29.)  Dr. Barnes allegedly told him that if he had a problem, he should tell Dr. Barnes directly. (*Id.* ¶ 29.)

Dr. Barnes again observed Dressler on May 21, 2014 and again gave him an "unsatisfactory" rating. (*Id.* ¶ 30.)  During the post-observation conference for this observation, Dr. Barnes stated that "you've complained about me a number of times.  When you go against the cavalry, all the bulls come charging." (*Id.*)  Dressler alleges that he "understood this to mean that he was being subjected to a concerted harassment effort by his supervisors." (*Id.*)  On June

13, 2014, Dressler again received an overall unsatisfactory rating for the 2013-2014 school year. (*Id.* ¶ 31.)

Dressler was assigned a new ATR supervisor, Eileen Miller, on September 11, 2014.  (*Id.* ¶ 32.)  Miller observed Dressler's teaching on September 22, 2014.  (*Id.* ¶ 33.)  At a post-observation meeting on September 29, 2014, Miller told Dressler "we want you successful in your final year."  (*Id.* ¶ 33.)  Dressler alleges that this was an improper reference to his age or plans to retire because, while he had previously mentioned to Miller that he planned to retire "in a year or two," he had never stated intention to retire at the end of that particular year.  (*Id.*)  Dressler asserts that he understood Miller to be pressuring him to retire.  (*Id.*)

On September 22, Dressler received an unsatisfactory rating after an observation by Miller.  (*Id.* ¶ 34.)  Thereafter, Miller told Dressler that if he agreed to retire at the end of the year, he would receive a satisfactory rating.  (*Id.* ¶ 35.)  Miller ultimately gave him an unsatisfactory rating for the 2014-2015 school year.  (*Id.* ¶ 39.)

Dressler alleges that he is not the only ATR who has faced age discrimination and that he is aware of at least one other ATR over the age of forty who has faced a similar pattern of negative reviews under Miller.  (*Id.* ¶ 37.)  He also states that he knows of at least one other ATR who was subjected to a similar pattern of negative reviews under Barnes.  (*Id.* ¶ 22.)

As a consequence of his two consecutive unsatisfactory annual ratings, Dressler states that he has been "rendered subject to expedited termination proceedings" under the DOE's Annual Professional Performance Review Plan.  (*Id.* ¶ 42.)  In addition, he contends that because of his unsatisfactory ratings for 2013-2014 and 2014-2015, he is now ineligible for employment as a "per session," temporary teacher after he retires, a position in which he could earn as much

as $30,000 annually.  (*Id.* ¶ 40).  Dressler further alleges that he is suffering from significant emotional distress as a result of these events.  (*Id.* ¶ 43.)

Dressler initiated this action on May 13, 2015.  (Dkt. No. 1.)  He filed his First Amended Complaint on August 24, 2015.  (Dkt. No. 19.)  Defendants have moved to dismiss the First Amended Complaint pursuant to Rule 12(b)(6).  (Dkt. No. 20.)

## II.   Discussion

To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The standard of "facial plausibility" is met when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Plausibility is distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely."  *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 556) (internal quotation marks omitted).  At the same time, a court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Twombly*, 550 U.S. at 555 (internal quotation mark omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.

### A.   Age Discrimination Under the ADEA

Dressler alleges that he was subject to discrimination on the basis of age in violation of the ADEA.  Discrimination claims brought under the ADEA are subject to the familiar burden-shifting framework set out in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973).

*See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 105-6 (2d Cir. 2010).  Because this is a motion to dismiss, the Court need only determine "whether the allegations in the complaint give plausible support to the reduced *prima facie* requirements that arise . . . in the initial phase of a litigation."  *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015); *see also E.E.O.C. v. Port Auth. of N.Y. and N.J.*, 768 F.3d 247, 254 (2d Cir. 2014) ("[W]hile a discrimination complaint need not allege facts establishing each element of a *prima facie* case of discrimination to survive a motion to dismiss . . . it must at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed.") (citation and internal quotation marks omitted).  The elements of a *prima facie* are: (1) that plaintiff was "within the protected age group"; (2) he "was qualified for the position; (3) he "experienced adverse employment action"; and (4) "such action occurred under circumstances giving rise to an inference of discrimination."  *Gorzynski*, 596 F.3d at 107.

Defendants argue that Dressler has failed to plausibly allege the fourth element—circumstances giving rise to an inference of discrimination.  "'The evidence necessary to satisfy the initial burden' of establishing that an adverse employment action occurred under circumstances giving rise to an inference of discrimination is 'minimal.'"  *Littlejohn*, 795 F.3d at 313 (quoting *Zimmermann v. Assocs. First Capital Corp.,* 251 F.3d 376, 381 (2d Cir.2001)). "An inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the [complained-of action.]'"  *Id.* at 312 (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)).

The First Amended Complaint is devoid of facts plausibly alleging that Defendants'
actions were motivated by age-based discrimination.  Dressler does not allege that he was the
target of, or overheard, "invidious comments" related to his age or to the age of others; or that
employees not in his protected group were treated more favorably; or that he was passed over for
a work assignment or other opportunity in favor of a person outside his protected group; or other
actions by Defendants plausibly viewed, in context, as a basis upon which to infer age-based
discrimination.  *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 88-89 (2d Cir.
2015); *Littlejohn*, 795 F.3d at 312.  Dressler cites only two non-conclusory allegations in support
of his argument that an inference of discrimination has been plausibly raised.  (*See* Dkt. No. 25 at
15.)  First, he notes that Miller spoke of Plaintiff's "final year" and "retirement," but that
Dressler had only spoken with Miller about his plan to retire "in a year or two."  (Dkt. No. 19
¶ 33.)  Second, he alleges that Miller told Dressler that if he agreed to retire at the end of the
2014-2015 school year, he would receive a satisfactory rating.  (*Id.* ¶ 35.)

Even assuming the veracity of his claims and drawing every inference in his favor, the
Court concludes that Dressler's allegations suggest, at most, that Miller made comments
designed to pressure him into retirement, not that he was discriminated against on the basis of his
age.  An attempt to force Dressler to retire may run afoul of collectively bargained labor
protections or state and federal labor laws, but—unless it is motivated by age-based
discrimination—it is not within the ambit of the ADEA.  *See generally Hazen Paper Co. v.
Biggins*, 507 U.S. 604, 611-13 (1993) (noting that pension eligibility is correlated with but
"analytically distinct" from age, and that interference with the vesting of a pension could violate
the Employee Retirement Income Security Act but would not, without more, violate the ADEA.)
Indeed, "cases that have found references to retirement to be significant involved other indicia of

7

an improper [age-based] animus." *Hamilton v. Mount Sinai Hosp.*, 528 F. Supp. 2d 431, 447-48 (S.D.N.Y. 2007) (holding that the statements "why don't you retire" and "[you] better retire" did not, without more, raise an inference of discrimination on the basis of age); *see id.* (collecting cases); *Pitasi v. Garnter Grp., Inc.*, 184 F.3d 709, 715 (7th Cir. 1999) (holding that a single comment that could be read as an attempt to coerce early retirement did not "standing by itself . . . create an inference of age-based discrimination."); *see also Acevedo-Parilla v. Novartis Ex-Lax, Inc.*, 696 F.3d 128, 147 (1st Cir. 2012) ("We acknowledge that "an offer of early retirement . . . is not, by itself, evidence of . . . discriminatory animus" and that "something more must be shown that would tie the decision to offer early retirement to discrimination.") (citation and alterations omitted).

This is not to say that an effort to pressure a person into retirement cannot give rise to an inference of discrimination. But where, as here, a plaintiff has alleged no more than single a comment which can be read as an attempt to motivate retirement, the inference of age-based discrimination is unwarranted. Indeed, give the paucity of supportive allegations in Dressler's complaint, to hold that he has plausibly raised an inference of discrimination would be to endorse a *per se* rule that an attempt to force an employee's retirement is, alone, sufficient to support an inference of age-based discrimination at the pleading stage.

Because he has not plausibly alleged circumstances giving rise to an inference of discrimination, Dressler's discrimination claim is dismissed.

### B.    Retaliation Under the ADEA

Dressler also contends that his supervisors retaliated against him in violation of the ADEA.

8

Retaliation claims under the ADEA are also subject to the burden-shifting framework established for Title VII cases. *Gorzynski*, 596 F.3d at 110.  To establish a *prima facie* case of retaliation, an employee must plausibly allege that "(1) she engaged in an activity protected by the [ADEA]; (2) the employer was aware of this activity; (3) the employer took an adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Caskey v. Cty. of Ontario*, 560 F. App'x 57, 58 (2d Cir. 2014) (quoting *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (alterations omitted)).

In his opposition to the motion to dismiss, Dressler does not clarify which of his actions constitute activity protected by the ADEA.  (*See* Dkt. No. 25 at 16.)  But a review of the First Amended Complaint reveals two candidates.  First, Dressler could argue that he engaged in protected activity when he filed a charge of discrimination with the EEOC in May 2010, and when he pursued his subsequent lawsuit against the DOE, which terminated in August 2012. Second, Dressler could argue that he engaged in protected activity in March 2014, when he asked McLean if he could be assigned a new supervisor to replace Dr. Barnes.

If the protected activity at issue here is Dressler's 2010 EEOC charge and his subsequent lawsuit, then he has failed to plausibly allege that "a causal connection exists between the alleged adverse action and the protected activity." *Caskey*, 560 F. App'x at 58.  Dressler contends that he has sufficiently alleged such a causal connection because of the "temporal proximity" between the protected activity and the adverse employment actions at issue.  (Dkt. No. 25 at 17.) "While temporal proximity can support an inference of retaliation for purposes of establishing a *prima facie* case, the proximity must be 'very close.'" *Dhar v. City of New York*, 15-2698-cv, 2016 WL 3889108, at *2 (2d Cir. Jul. 15, 2016) (quoting *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 254 (2d Cir. 2014)) (summary order).  In this case, 18 months passed between the

termination of Dressler's prior lawsuit and the assignment of Dr. Barnes as his supervisor.  (Dkt. No. 19 ¶¶ 18-19, 21-24.)  Even assuming that the actions of Dr. Barnes qualify as adverse employment actions, this temporal gap is too great.  *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) ("Action taken . . . 20 months later suggests, by itself, no causality at all."); *Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cty.*, 252 F.3d 545, 554-55 (2d Cir. 2001) (noting that the Second Circuit has not established a "bright line to define the outer limits beyond which a temporal relationship is too attenuated" but reviewing cases where a temporal gap of eight months was the longest found to suggest a causal relationship).  Because the sole basis for inferring a causal relationship between Dressler's earlier litigation and the complained-of actions is a temporal proximity of no shorter than 18 months, he has failed to allege a causal connection sufficient to survive a motion to dismiss.[1]

If, alternatively, Dressler relies on his request to be assigned a new supervisor as protected activity, his claim fails because "protected activity . . . refers [only] to action taken to protest or oppose statutorily prohibited discrimination."  *Benn v. City of New York*, 482 F. App'x 637, 638-39 (2d Cir. 2012) (summary order) (internal citation and quotation marks omitted).  A complaint about a supervisor that "could not reasonably have been understood to protest statutorily prohibited discrimination . . . do[es] not qualify as protected activity that may give rise to a claim of retaliation."  *Id.*  Dressler alleges only that he "asked that he be assigned a different

---

[1] Moreover, the fact that Dressler received satisfactory ratings in the period between his prior litigation and the alleged adverse employment actions further undermines the conclusion that a causal connection existed.  *See, e.g.*, *Vaughn v. City of New York*, No. 06-CV-6547, 2010 WL 2076926, at *18 (E.D.N.Y. May 24, 2010); *see also Dayes v. Pace Univ.*, 2 F. App'x 204, 208 (2d Cir. 2001) (summary order) ("As the District Court correctly concluded, the inordinate amount of time between [plaintiff's] complaint about [the supervisor's] conduct and his negative review, especially given his intervening positive review, defeats [the plaintiff's] attempt to establish a causal connection between the two events.").

supervisor." (Dkt. No. 19 ¶ 28.)  There is no basis upon which to conclude that Defendants should have understood this request as a complaint against age-based discrimination.  *See Benn*, 482 F. App'x at 638-39; *Risco v. McHugh*, 868 F. Supp. 2d 75, 111 (S.D.N.Y. 2012); *Aspilaire v. Wyeth Pharm., Inc.*, 612 F. Supp. 2d 289, 308-09 (S.D.N.Y. 2009) ("While plaintiff may have believed that she was the victim of discrimination, an undisclosed belief of such treatment will not convert an ordinary employment complaint into a protected activity.")

Accordingly, Dressler's ADEA retaliation claim is dismissed.

### C.      Remaining Claims

Dressler's remaining claims arise under state and city law.  Because it has dismissed all of Dressler's federal claims, the Court declines to exercise supplemental jurisdiction over these non-federal claims.  *See Oneida Indian Nation of New York v. Madison Cty.*, 665 F. 3d 408, 436-37 (2d Cir. 2011) ("Although federal courts may exercise jurisdiction over related state-law claims . . . a court may . . . nonetheless decline to exercise supplemental jurisdiction over a claim [where] . . . the district court has dismissed all claims over which it has original jurisdiction." (citation and internal quotation marks omitted)); *Valencia ex rel. Franco v. Lee*, 316 F. 3d 299, 305 (2d Cir. 2003) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988))).  Given the early stage of this litigation, the Court concludes that the *Cohill* factors support the decision to decline supplemental jurisdiction in this case.[2]  *Id.*

---

[2] Dressler does not oppose the Court's decision to decline to exercise supplemental jurisdiction. (*See* Dkt. No. 25 at 1 n. 1 ("Should the Court rule that Plaintiff has failed to plead sufficient facts

**III.     Conclusion**

For the foregoing reasons, the Defendants' motion to dismiss is GRANTED.  The federal

claims are dismissed under Rule 12(b)(6) and the state- and city-law claims are dismissed

without prejudice because the Court declines to exercise supplemental jurisdiction.

The Clerk of Court is directed to close the motion at docket number 20 and to close this

case.

SO ORDERED.


Dated:  August 15, 2016
        New York, New York

_____
                J. PAUL OETKEN
           United States District Judge

_____

as to any of his Federal claims, Plaintiff respectfully requests that the Court decline to exercise
jurisdiction as to the Plaintiff's State and City claims . . . .").)